508 F.Supp. 187 (1981)
UNITED STATES of America
v.
COMMONWEALTH OF VIRGINIA.
Civ. A. No. 79-1003-R.
United States District Court, E. D. Virginia, Richmond Division.
February 4, 1981.
Robert W. Jaspen, Asst. U. S. Atty., Richmond, Va., for plaintiff.
Kenneth W. Thorson, Asst. Atty. Gen., Richmond, Va., for defendant.

ORDER
WARRINER, District Judge.
The United States has presented to the Court a knotty and uncomfortable problem. The Court entered judgment in this action on 31 October 1980. Counsel for the parties concur that the last day on which plaintiff could note an appeal was 30 December 1980. Plaintiff's notice of appeal was not timely filed and it now seeks a ruling of this Court under Federal Rules of Appellate Procedure 4(a)(5) that, "upon a showing of excusable neglect or good cause," this Court should extend the time for the filing of a notice of appeal.
The Court assumes that the "showing" required by the Rule would, under ordinary circumstances, be presented by affidavits, exhibits, depositions or by a hearing ore tenus. Plaintiff has chosen none of these methods, but has instead filed an unverified brief setting forth the facts relied upon. The Court has confidence in the veracity of counsel for the United States. The Court acknowledges that even his most casual remarks *188 addressed to the Court would be truthful. Accordingly, the Court has no doubt that the statements made in the brief by counsel, though not sworn to, are truthful. It is noteworthy, also, that opposing counsel has not attacked the factual basis of counsel's plea. Nevertheless, the Court would be ill-advised to make it a practice to accept "speaking briefs" from some lawyers and not others. Were the Court inclined to grant the motion it would first require the requisite showing from plaintiff rather than the recitation of facts set forth in the brief.

A.
It is axiomatic that governmental agencies are unable to take prompt, decisive action. Accordingly, the Congress in adopting the rules of procedure have granted to the United States Government extraordinary time limits not applicable to the ordinary litigant. The ordinary litigant must file his notice of appeal within 30 days after the entry of judgment. Fed.R.App.P. 4(a)(1). The United States may file its notice of appeal within 60 days after such entry. Id. In confirmation of the wisdom of the rulemakers in granting extra time to the United States, as the United States neared the end of the normal 30-day period in this case, it still had not determined whether it should appeal. By letter and telephone correspondence between Mr. Shraberg, Justice Department lawyer responsible for this litigation, and Mr. Jaspen, Assistant U. S. Attorney in the Richmond Division as local counsel, it was disclosed that the Solicitor General had the question of appeal under advisement. Since Mr. Shraberg did not know when the Solicitor General might reach his determination, it was arranged that as the 60-day period wended its way toward its end, Mr. Jaspen would file a notice of appeal unless he had sooner heard that the Solicitor General had decided in the negative. The date selected for filing the notice of appeal in the appropriate contingency was 26 December 1980.
No determination by the Solicitor General was conveyed to Mr. Jaspen as he approached his vacation period scheduled for 22 December through 2 January 1981. Faced with the indecision of the Solicitor General, Mr. Jaspen dictated his notice of appeal on to a tape recorder. The dictated information contained a request that another lawyer in the U.S. Attorney's Office be requested to sign the notice of appeal and it included instructions that the notice be filed no later than 26 December 1980 unless word was received from the Solicitor General that no appeal was desired. It does not appear that arrangements were made directly with any other lawyer in the office to be mindful of the matter nor does it appear that any like instructions were given to Mr. Jaspen's secretary. According to the brief, the only instructions given and the only precautions taken were those dictated onto the tape.
Unfortunately, the tape was lost and no action was taken by anyone. Upon Mr. Jaspen's return to his office from vacation on 5 January, he received a telephone call from Mr. Shraberg in which Mr. Shraberg related that his check with the Clerk's Office had disclosed that no notice of appeal had been filed. Mr. Jaspen proceeded immediately to file the motion sub judice and tender a notice of appeal to the Clerk's Office.
Notably, Mr. Jaspen in his brief does not state whether or not the Solicitor General has finally made up his mind to appeal nor does he state when Mr. Shraberg discovered that the appeal had not been filed. According to the brief, Mr. Shraberg "had primary responsibility for the substantive litigation" while Mr. Jaspen "acted as local counsel in accordance with this Court's local rules." Thus, if Mr. Shraberg had made a timely check with the Clerk's Office on 26 December (or the 29th or the 30th of December) to determine whether his contingency plans were being met, he could have easily filled the gap left by Mr. Jaspen's plans having gone awry. Further, if the Solicitor General had not made up his mind by the end of the 60-day period, then it would appear that the failure to note the appeal was as much a consequence of indecisiveness as it was of inadvertence.

*189 B.
Given the facts above set forth, and despite the protective and niggardly appearance of a denial of an extension, the Court is inclined to find an absence of excusable neglect.
1. It should be noted that the substance of Rule 4(a)(5) has undergone relatively minor changes over the years. Prior to 1 July 1970 the question involved in this case was controlled by Rule 73(a) of the Federal Rules of Civil Procedure. In 1946 Rule 73(a) was amended to allow a district court to extend time for noticing an appeal for not more than 30 days, "upon a showing of excusable neglect based on the failure of a party to learn of the entry of the judgment." This amendment was based upon a Supreme Court ruling that such a failure was ground for extending the time for filing an appeal. Hill v. Hawes, 320 U.S. 520, 523-524, 64 S.Ct. 334, 335-36, 88 L.Ed. 283 (1944). In 1966 the Rule was again amended by omitting the requirement of a failure to learn of the entry of judgment. At the time of this amendment, the Advisory Committee noted:
In view of the ease with which an appeal may be perfected, no reason other than failure to learn of the entry of judgment should ordinarily excuse a party from the requirement that the notice be timely filed. But the District Court should have authority to permit the notice to be filed out of time in extraordinary cases where injustice would otherwise result.
The Rule in this particular was not changed upon the adoption of the Federal Rules of Appellate Procedure and the incorporation of the provisions of former Rule 73(a) into Rule 4(a). In 1979 Rule 4(a) was again amended and the subject matter was dealt with in Rule 4(a)(5). At this time the Rule permitted an extension not only upon a showing of excusable neglect, but also upon a showing of "good cause." The addition of the words "good cause" does not affect this case. The Advisory Committee noted:
The proposed amended Rule expands to some extent the standard for the grant of an extension of time. The present rule requires "a showing of excusable neglect." While this was an appropriate standard in cases in which the motion is made after the time for filing the notice of appeal has run, and remains so it has never fit exactly the situation in which the appellate seeks an extension before the expiration of the initial time. In such a case "good cause" which is the standard that is applied in the granting of other extensions of time under Rule 26(b), seems to be more appropriate. (Emphasis added.)
Thus, it appears from the "legislative history" that the excusable neglect we are dealing with in this case is the same excusable neglect which the Advisory Committee in 1966 indicated should be ordinarily applied only upon the failure of a party to learn of the entry of judgment. Otherwise, it should be applied only "in extraordinary cases where injustice would otherwise result."
This is not an extraordinary case and the Court perceives no injustice in a requirement that the Government make up its mind within 60 days. Obviously, mere indecision or a change of mind as to whether to appeal does not constitute excusable neglect.
2. In Nichols-Morris Corp. v. Morris, 279 F.2d 81 (2d Cir. 1960) plaintiff's trial counsel was on vacation when judgment was entered but the managing partner of the law firm received notice of its entry. The client finally decided to appeal some two weeks after the expiration of the 30-day period. The Second Circuit confirmed the trial court's decision that even though trial counsel, being on vacation, had never actually learned of the entry of judgment, it was the plaintiff's indecisiveness, under all the circumstances, which had occasioned the motion for extension. Such indecisiveness was not "excusable neglect."
In Linabary v. Maritime Overseas Corp., 376 F.Supp. 688 (S.D.N.Y.1973), plaintiff apparently did not desire to appeal unless defendant appealed and, accordingly, waited until defendant had noted its appeal. *190 Defendant's appeal followed several posttrial motions and, apparently, plaintiff simply missed the time limit on the filing of the cross-appeal. Although plaintiff claimed that its failure to file a timely cross-appeal was a consequence of late notice of the filing by the defendant of its appeal, the trial court ruled that the real cause of plaintiff's default was its tactical decision not to appeal unless defendant appealed. The district court ruled that stumbling over such a tactical move did not constitute excusable neglect.
The Fifth Circuit in Gann v. Smith, 443 F.2d 352 (5th Cir. 1971) overruled the extension granted by the trial court upon the request of a State attorney general when the attorney general changed his mind about appealing the grant of a writ of habeas corpus shortly after the 30-day period had expired. The Fifth Circuit Court took this action despite the strong deference normally given to the decision of the trial court. See, Harris Truck Lines, Inc. v. Cherry Meat Packers, Inc., 371 U.S. 215, 217, 83 S.Ct. 283, 285, 9 L.Ed.2d 261 (1962); Gooch v. Skelly Oil Co., 493 F.2d 366, 368 (10th Cir.), cert. den. 419 U.S. 997, 95 S.Ct. 311, 42 L.Ed.2d 270 (1974).
Finally, in Levisa Stone Corp. v. Elkhorn Stone Co., 411 F.2d 1208 (6th Cir. 1969), cert. den. 397 U.S. 925, 90 S.Ct. 913, 25 L.Ed.2d 104 (1970), plaintiff had sued two defendants. The complaint against the appellee was dismissed on 14 March and the complaint against the co-defendant was dismissed on 13 May. The consequences arising from the dismissal of the action against appellee on 14 March only "became clear" to plaintiff when the complaint was dismissed as to the co-defendant on 13 May. Notice of appeal was promptly filed but the Sixth Circuit reversed the trial court and found that the confusion in plaintiff's mind which cleared up upon the second dismissal did not constitute excusable neglect.
Without question, the Solicitor General's indecisiveness did not constitute excusable neglect in this instance.
3. It is true as Robert Burns reminds us:
The best laid schemes o' mice and men Gang aft a'gley
In the offices of busy lawyers even the most systematic and organized management policies are no guarantee against a misstep. Lawyers, after all, are human. So are their secretaries. If excusable neglect be found each time well-laid plans go a'gley, then the rule would affect only the dullard and the careless.
While plaintiff's counsel certainly could not be characterized as being dullards or being careless, their plans were obviously defective. The filing of a notice of appeal is an extremely simple matter and in this case was entrusted to local counsel. Surely principal counsel, Mr. Shraberg, could have assumed personal responsibility at a negligible additional burden on his workload when Mr. Jaspen left on vacation. Alternatively, any other lawyer in the U.S. Attorney's Office could have assumed personal responsibility in Mr. Jaspen's absence. Indeed, the matter could have been personally entrusted to Mr. Jaspen's secretary to type up the notice of appeal at the requisite time and to arrange to have another lawyer in the office endorse it and see to its filing. Instead, the matter was entrusted to a recording tape.
Such an entrustment would, under ordinary circumstances, probably work well, but it certainly should have been subject to personal intervention as a fail-safe measure. But Mr. Shraberg, who presumably was aware of the situation, did not make a timely inquiry in this critical jurisdictional step. The neglect and inadvertence which characterized this case is similar to that found in Airline Pilots in Service of Executive Airlines, Inc., etc. v. Executive Airlines, Inc., 569 F.2d 1174 (1st Cir. 1978). A secretary in the employ of appellant's counsel entered an incorrect date in her diary for the expiration of the appeal period. The First Circuit quoted its earlier decision in Spound v. Mohasco Industries, Inc., 534 F.2d 404, 411 (1st Cir.), cert. den., 429 U.S. 886, 97 S.Ct. 238, 50 L.Ed.2d 167 (1976);
Excusable neglect calls for "circumstances that are unique or extraordinary." (Citations omitted). If this includes a *191 mere palpable mistake by experienced counsel, the requirement would be meaningless.
The court observed further in rendering its decision in Airline Pilots:
A mistake made by an attorney or his staff is not, except in unusual or extraordinary circumstances not present here, such excusable neglect as to invoke the rule.
569 F.2d at 1174.
To similar effect is the ruling of the Ninth Circuit in Selph v. Council of Los Angeles, 593 F.2d 881 (9th Cir. 1979). There appellant's counsel alleged that his failure to make a timely appeal was occasioned by the moving of his office which disrupted normal calendaring practices coupled with the press of business which distracted him from filing a timely appeal. The Circuit Court found that the normal problems of a busy attorney do not constitute "excusable neglect." Id. at 883-884; see also Maryland Casualty Co. v. Conner, 382 F.2d 13, 16-17 (10th Cir. 1967).
It is true that the Fourth Circuit does not appear to take a strict line in applying Rule 4(a)(5) nor does it appear to limit "excusable neglect" to extraordinary or unique cases. Counsel for plaintiff cites two published Fourth Circuit cases as indicating that this circuit considers such ordinary things as reasonably anticipatable mail delay as "excusable neglect." An examination of the two cases, however, reveals that the Fourth Circuit did not so hold. In Doctor v. Seaboard Coast Line RR., 540 F.2d 699, 704 (4th Cir. 1976) the last date to note an appeal was 7 November. The notice was mailed on 6 November and was received by the Clerk's Office on 8 November. The district court granted plaintiff's motion to extend the time of filing, basing the grant on "the interest of justice." The district court made no finding of excusable neglect and though the Court of Appeals acknowledged that the proper procedure would be to remand the cause to the district court to determine whether on the record there was "excusable neglect," the appeals court determined that such a procedure would be "a useless formality" since it was "satisfied" with the substantive order from which the appeal was taken.
It should be noted, of course, that if there were no finding of excusable neglect then there was no authority for the district judge to grant the extension. Further, and more important, if no extension were properly granted, then the court of appeals had no jurisdiction. If it had no jurisdiction then it was immaterial whether it was satisfied with the substantive order or not. Thus, it is extremely doubtful that the Fourth Circuit had jurisdiction in Doctor to render any opinion. Be that as it may, it is clear that they rendered no opinion with respect to whether the mail's delay is extraordinary and unique so as to constitute excusable neglect.
The other reported Fourth Circuit case is Evans v. Jones, 366 F.2d 772, 773 (4th Cir. 1966). This is another case of the mail's delay. Appellant mailed the notice of appeal on November 27 expecting it would be delivered by the final day for noticing an appeal, 29 November. It was not received until 30 November. In Evans, the Fourth Circuit recognized that it was without power to relieve appellant from the consequences of his failure to file within time, citing Gunther v. E. I. DuPont deNemours & Co., 255 F.2d 710, 715 (4th Cir. 1958). Accordingly, the action was remanded to the district court in order for the district court to determine whether there was excusable neglect. It could well be argued that such a remand would be "a useless formality" if it were readily apparent that ordinary delay in mailing would not constitute excusable neglect. But in legal contemplation that question was not before the Fourth Circuit and it could not decide that question either for or against appellant. It did the only proper thing it could do and that is remand to the trier of fact for a factual determination subject to appellate review.
Finally, plaintiff points to an unreported Fourth Circuit case which took a lenient view of the strictures of the rule. In the unreported case the Justice Department *192 mailed to the U.S. Attorney's Office a notice of appeal to be filed by the U.S. Attorney. Through inadvertence, the mail was parcelled out to the wrong department in the U.S. Attorney's Office and the mistake was not discovered until several days after the time for appeal had expired. The court of appeals said:
The district court did not abuse its discretion by granting the extension. The responsible government officials had acted in a timely manner, but through no fault of theirs, the papers were inadvertently misdirected. Rule 4(a) has been authoritatively construed to permit the district court to grant an extension when "injustice would otherwise result."
Moore's Federal Practice is cited as the source of the authoritative construction.
This unreported decision is at substantial variance with the history of the rule as recited hereinabove and it is at variance with the comments of the Advisory Committee attached to the several amendments which have brought the rule into its present form. The opinion seems to shift the focus of consideration from "excusable neglect" to "injustice."
It is always just that one should have an appeal from a trial court and it would seem that it would always be an injustice to deny such an appeal merely because of the inadvertent missing of an arbitrarily drawn deadline. Only when prejudice to the appellee would result from the granting of an extension would it be appropriate, it seems to me, to find an injustice. Surely what is just on the 30th day does not become unjust on the 31st merely because the 31st day has come.
Thus, if the justice or injustice of the question is to be the basis for granting or denying a motion for an extension, the Court should look not to the acts or omissions of appellant but, instead, to any prejudice that might accrue to appellee from a granting of the extension. This is clearly and explicitly not what the rule requires. The rule requires that the conduct of the appellant only be looked to and that only if excusable neglect be shown on appellant's part should an extension be granted. As has been shown above, excusable neglect is to be found when appellant receives no notice of the entry of judgment or when other extraordinary or unique circumstances subsumed within the rubric of "excusable neglect" occur.
Further, the unpublished decision should not be accorded great weight. Rule 18 for the United States Court of Appeals for the Fourth Circuit, in Rule 18(d)(ii), states that the citation of unpublished opinions "is disfavored, except for the purpose of establishing res judicata, estoppel, or the law of the case." In Jones v. Superintendent, Virginia State Farm, 465 F.2d 1091, 1094 (4th Cir. 1972) the Fourth Circuit indicated that it would "refuse to treat [unpublished opinions] as precedent within the meaning of the rule of stare decisis."
But even if it be assumed that the unpublished opinion has the binding effect of law on this Court, it is distinguishable. The Court of Appeals found that "the responsible government officials had acted in a timely manner, but through no fault of theirs, the notice was not filed in a timely manner." With all respect to the government lawyers in this case, this Court cannot say that they acted in a timely manner and that the failure to file was through no fault of theirs. The fault in this case lay wholly with Mr. Shraberg, Mr. Jaspen, or the Solicitor General. While a case might be made against Mr. Jaspen's secretary, Mr. Jaspen does not attempt to make such a case except by mere supposition. The mistakes in this case were the Solicitor General's indecisiveness, Mr. Shraberg's failure to check on a critical procedure when he knew that local counsel was on vacation, and Mr. Jaspen's failure to personally see to it that another lawyer or his secretary personally accepted responsibility for the filing of the notice in a timely manner.

C.
Despite the special consideration given the United States by allowing it twice as long as an ordinary litigant to make up its *193 mind whether it wants to appeal, the time allowed was insufficient for the government to make up its mind. The notice of appeal that was intended to be filed on 26 December was not a genuine notice of appeal but was instead, admittedly, merely a device to provide the government with additional time, not permitted by the rules, for decision-making on the question of appeal. This additional factor, though not necessary to tip the scales, is some slight balm to the Court in reaching its disagreeable decision that the extension should not be granted.
The motion is DENIED.