In the Matter of J.P. FYFE, INC. OF
FLORIDA, Plaintiff,

v.

BRADCO SUPPLY
CORPORATION, Defendant.

Civ. No. 88–4030 (CSF).

United States District Court,
D. New Jersey.

Feb. 23, 1989.

Klehr, Harrison, Harvey, Branzburg, Ellers & Weir by Carol Ann Slocum, Cherry Hill, N.J., for plaintiff.

Budd Larner Gross Picillo Rosenbaum Greenberg & Sade by Suzanne M. Klar, Short Hills, N.J., for defendant.

CLARKSON S. FISHER, District Judge.

This matter is before the court on the motions of Bradco Supply Corporation ("Bradco") for an extension of time within which to file a notice of appeal, and for a stay of judgment pending appeal. On December 2, 1988, the court affirmed the judgment of the United States Bankruptcy Court for the District of New Jersey which absolved J.P. Fyfe, Inc.'s ("Fyfe") Trustee from paying $130,000 to Bradco, pursuant to 11 U.S.C. section 547(c)(2). 96 B.R. 474 On December 15, 1988, Bradco filed a motion for stay pending appeal. The time for filing a notice of appeal expired on January 3, 1989; three days later, on January 6, 1989, Bradco filed a motion to extend time for filing the notice. On January 17, with agreement of counsel, the court heard oral argument on both motions and directed the parties to submit such further arguments and exhibits as they deemed necessary. Because there is little point in addressing the question of a stay until Bradco's motion for an extension of time has been adjudicated, the court first addresses the latter application.

■ Federal Rule of Appellate Procedure 4(a) requires that "a notice of appeal in a civil case must be filed within 30 days of entry of the judgment or order from which the appeal is taken." *Browder v. Director, Illinois Dept. of Corrections*, 434 U.S. 257, 264, 98 S.Ct. 556, 560, 54 L.Ed.2d 521 (1978) (*per curiam*). A party's compliance with the rule is " 'mandatory and jurisdictional.' " *Id., quoting United States v. Robinson*, 361 U.S. 220, 229, 80 S.Ct. 282, 288, 4 L.Ed.2d 259 (1960). The harshness of Rule 4(a) is ameliorated by subsection 4(a)(5), which allows an extension of time upon a showing of "excusable neglect" by counsel. Fed.R.App.Proc. 4(a)(5). Because "the notice of appeal is a simple, one-page document, requiring little preparation time or skill," *Meza v. Department of Social & Health Servs.*, 683 F.2d 314, 315 (9th Cir.1982), a Rule 4(a)(5) extension is not to be easily granted. *Fase v. Seafarers Welfare & Pension Plan*, 574 F.2d 72, 76 (2d Cir.1978).

■ The leading Third Circuit case regarding Rule 4(a)(5) is *Consolidated Freightways Corp. v. Larson*, 827 F.2d 916 (3d Cir.1987), *cert. denied sub nom. Consolidated Freightways Corp. v. Secretary of Transp. of Pennsylvania*, ——U.S.——, 108 S.Ct. 762, 98 L.Ed.2d 775 (1988). There, the Third Circuit set forth a two-phase test for excusable neglect applications. This test is to be applied carefully on an *ad hoc*, fact-specific basis, bearing in mind that the interest in the finality of judgments must be tempered by the need for promoting the just resolution of disputes. *Id.* at 920, 921. Under *Consolidated Freightways*, the district court must first determine whether a Rule 4(a)(5) movant's factual showing demonstrates a "substantial good faith effort to comply" with appellate procedure. *Id.* at 921. If, and only if, the movant's efforts meet this threshold requirement, the court must proceed to the second stage of the *Consolidated Freightways* test, which requires an evaluation of the facts according to the following five criteria:

(1) whether the inadvertence reflects professional incompetence such as ignorance of the rules of procedure.

(2) whether the asserted inadvertence reflects an easily manufactured excuse incapable of verification by the court.

(3) whether the tardiness results from counsel's failure to provide for a readily foreseeable consequence.

(4) whether the inadvertence reflects a complete lack of diligence.

(5) whether the court is satisfied that the inadvertence resulted despite good faith efforts toward compliance.

*Id.* at 919. In light of this framework, the court turns to Bradco's claim of "excusable neglect." Fed.R.App.Proc. 4(a)(5).

This motion involves three attorneys who represent Bradco concerning both this and other matters. Two, Michael Rosenbaum and Suzanne Klar, worked on the relevant bankruptcy matters while a third, Henry Larner, handled various other corporate and real estate matters. Affidavits of Suzanne Klar, Paragraphs 2–3; Affidavit of Henry Larner, Paragraph 2. Because Bradco had not decided whether or not to appeal the court's judgment, during the week of December 19, 1988, Rosenbaum informed Klar that he was entrusting her with the "sole responsibility" for filing the notice should Bradco decide to appeal. Affidavit of Klar, Paragraph 3. Rosenbaum also told Klar that he would be in Colorado from December 24, 1988 until "after the New Year." *Id.*

On December 27, 1988, Klar became extremely ill. Two days later, Michael Weinberger, Bradco's General Counsel, instructed the firm to file the notice of appeal. Affidavit of Michael Weinberger, Paragraph 2. This instruction was given to Larner during a conversation between the two attorneys; Larner left Weinberger's instruction, in the form of a message, for Klar. Larner was unaware that Klar was absent due to illness. Affidavit of Larner, Paragraph 4. Klar became aware of these instructions when she returned to work on January 4, 1989, and these proceedings were begun on Klar's application only a few days thereafter. Affidavit of Klar, Paragraphs 5–6.

These facts demonstrate a substantial, good-faith effort by Bradco's counsel to comply with Rule 4(a).[1] Fyfe contends that nothing indicates that either Bradco or its attorneys were aware of the deadline. The submissions of Bradco's counsel do not contain an express statement that they were aware of the deadline; Klar's affidavit shows that Bradco was undecided about the appeal, and that consequently she and Rosenbaum formulated a plan whereby the notice would be timely filed. Affidavit of Klar, Paragraphs 3, 5. Further, Bradco filed the instant motion within three days from the expiration of Rule 4(a)'s time period, and within two days from Klar's return to work. The initial stage of the *Consolidated Freightways* analysis does not require a faultless demonstration of machine-like punctuality; it merely requires an indication of substantive good faith regarding appellate procedure. The court is satisfied that counsel's submissions have met this requirement, and proceeds to the second phase of the *Consolidated Freightways* inquiry.[2]

In so proceeding, however, the court is confronted with a somewhat unusual situation. Fyfe has argued that the issue is not solely how to apply the *Consolidated Freightways* test, but is also to whom the test should apply. As noted above, the facts present three attorneys who may be required to show excusable neglect, namely, Larner, Rosenbaum and Klar. Fyfe has contended that each must satisfy Rule 4(a)(5)'s standard, and asserts that lacunae in Larner's affidavit as well as the absence of an affidavit from Rosenbaum prohibit an extension of time.

---

1. In this regard the court notes that Bradco's motion for stay pending appeal more than qualifies for the "in substance" exception to Rule 4(a), which allows any paper filed with the court to function as a notice of appeal if that paper (a) communicates a party's intent to appeal, (b) identifies the judgment to be appealed, and (c) identifies the court to which the appeal will be taken. *In re Bertoli,* 812 F.2d 136, 139 (3d Cir.1987).

2. In this regard, Fyfe argues that the court should take into account indications in the record that Bradco showed a cavalier attitude toward the procedural requisites of its appeal. Passing the fact that the record does not appear to reveal such an attitude, the court notes that Bradco's general counsel communicated Bradco's instruction five days before the expiration of Rule 4(a)'s deadline. Affidavit of Weinberger, paragraph 2. A party must run the risks of its indecision regarding an appeal. But such risks, for the purposes of a Rule 4(a)(5) inquiry, end when instructions are issued to counsel before the expiration of the deadline. Because Bradco instructed its attorneys to file the notice five days before the end of the time period, the court cannot say that Bradco's actions are in any way responsible for the need to make the instant determination.

■ Although the attendance of multiple attorneys upon the appealed matter has been held to militate against granting a Rule 4(a)(5) extension, *see e.g., Meza,* 683 F.2d at 315; *Alaska Limestone Corp. v. Hodel,* 107 F.R.D. 105, 107 (D. Alaska 1985), *aff'd.* 799 F.2d 1409 (9th Cir.1986), the court is not aware of authority which specifically requires every attorney in a firm who assisted in the representation of a client to show excusable neglect. The court thinks that, at the very least, *Consolidated Freightways* tests only those attorneys working on the appealed matter. Larner was not one of these attorneys; he represented Bradco on "various general corporate and real estate matters," Affidavit of Larner, paragraph 2, none of which included the bankruptcy appeal before the court. In this regard the court notes that Larner's name does not appear on the briefs submitted by Bradco in this matter, nor did Mr. Larner file an appearance. Larner's role regarding the notice of appeal is tangential, and Fed.R.App.Proc. 4 does not impose upon him the duty to ascertain when the notice of appeal was due, or to ensure that Klar was capable of filing it.

■ Regarding Rosenbaum and Klar, Fyfe has cited authority which requires both counsel to show excusable neglect. In *Prestex, Inc. v. United States,* 4 Cl.Ct. 317 (1984), *aff'd. mem.* 746 F.2d 1489 (Fed. Cir.1984), the court dealt with a motion to reconsider its earlier denial of a Rule 4(a)(5) extension. The attorney responsible for filing the notice claimed that his failure to do so in a timely manner was produced by medication, which resulted in confusion as to the date of filing. After declining to reconsider its determination that the attorney was capable of complying with Rule 4(a), the court addressed the question of whether the attorney of record was also required to show excusable neglect. The court stated:

> [P]laintiff has chosen to ignore the attorney of record's responsibilty by characterizing it as a non-issue.... However, the sole responsibility for ensuring compliance with court filing deadlines lay with the attorney of record.... Even if the attorney of record had delegated

work in the case to another attorney, it was the attorney of record, not the attorney to whom the work had been delegated, who is answerable to the court and the client for any failure to comply with filing requirements.

*Id.* at 320–21. The court concluded that even were the "non-record attorney" to have been medically incapable of complying with Rule 4(a), an extension could not be granted because the attorney of record had not also demonstrated excusable neglect. *Id.*

In *United States v. Commonwealth of Virginia,* 508 F.Supp. 187 (E.D.Va.1981) the court confronted an extension in the context of Rule 4(a)(1). Although the deadline in that case was fast approaching, the government had not decided whether to appeal. Therefore the Justice Department attorney responsible for the litigation told local counsel to file the notice of appeal unless the local attorney was instructed otherwise prior to a certain date. The notice was not filed in a timely manner because local counsel had gone on vacation, and no one had discovered his recorded instructions in time. The court refused an extension, stating that the Justice Department attorney was capable of ascertaining the neglect and correcting it. *Id.* 188–89.

Fyfe argues that these cases require both Rosenbaum and Klar to satisfy the *Consolidated Freightways* test before the court may issue an extension of time. There is, however, another line of cases which focuses on the attorney who was to perform the actual task of filing the notice. In *Resnick v. Lehigh Valley Ry. Co.,* 11 F.R.D. 76 (S.D.N.Y.1951), two attorneys were responsible for the case. One was the attorney of record, while the other was principally responsible for the litigation. The latter attorney did not receive notice of the judgment before the expiration of the deadline. No showing was made that the attorney of record also had not received notice. *Id.* at 77. In granting the motion for an extension, the court stated:

> Plaintiff should not be deprived of an opportunity to appeal from the adverse

judgment by reason of the confusion which appears to have existed between attorney of record and trial counsel with respect to the notice of entry of judgment and the expiration date for the filing of a timely appeal.

*Id.* at 77. Although *Resnick* does not precisely advance the idea that only the "truly responsible" attorney need show excusable neglect, its granting an extension despite the absence of a showing concerning the attorney of record's reception of the notice of judgment certainly runs counter to the approach taken in *Prestex.*

Similarly in *Babich v. Clower*, 528 F.2d 293 (4th Cir.1975), the court confronted a situation where local counsel had received notice of the entry of a judgment, but had not informed the attorney who was chiefly responsible for the case. The order received by local counsel stated that all counsel of record would receive a copy; therefore the local attorney assumed that his counterpart was duly advised. Although the district court's local rules expressly provided that service on local counsel was sufficient to provide service on the party, the Fourth Circuit held that the facts demonstrated excusable neglect. *Id.* at 294. The court granted an extension of time, reasoning that the non-local attorney who was "in charge" of the case could not have been expected to file the notice until he was informed of the judgment. *Id.* at 295. Although both *Babich* attorneys were of record, the court did not impose a duty on the non-local counsel to have informed himself of the entry of judgment, or to have closely supervised the activities of the local attorney. Rather, the court employed a more flexible approach which accounted for the actual "division of labor" between counsel. *Id.*

This second line of cases may be read for the idea that where one attorney has acquired the true responsibility for filing the notice of appeal, that attorney's excusable neglect is sufficient to grant an extension of time. This is the more sound approach, for it is truly consonant with the realities and needs of modern legal practice. A party might truly rest his case in the hands of counsel who is not of record; surely that

party's hope of appeal should not be foreclosed due to a finding of "inexcusable neglect" on the part of different counsel, counsel upon whose services that client never actually relied. The court holds that where an attorney has acquired the sole responsibility for filing a notice of appeal, only he may fairly be required to satisfy Rule 4(a)(5)'s test.

The foregoing, however, is a tempest in a teapot, for Ms. Klar is the attorney of record regarding the bankruptcy appeal before the court. Fyfe has claimed that Rosenbaum is the attorney of record. But its exhibit in support of this argument, a copy of the docket sheet and complaint for *Corradetti Enterprises, Inc. v. Co-operative Shippers, Inc.*, Civil No. 89–0035, is unpersuasive. The court notes that the docket sheet for the appeal from the bankruptcy court lists Klar as the attorney of record. *See* Docket Sheet, *In re J.P. Fyfe, Inc.*, Civil No. 88–4030. Therefore, because Klar alone held the responsibility for filing the notice under either *Prestex* or *Resnick/Babich*, the court turns to her participation in these events against the backdrop of *Consolidated Freightways.*

As discussed above, Klar fell ill on the 27th of December, before Weinberger had informed Larner of Bradco's decision to appeal. Further, Klar had taken medication for her illness, and was too ill to speak to members of her firm on the telephone. Supplemental Affidavit of Suzanne Klar, Paragraphs 4–5; Affidavit of Michael Weinberger, Paragraph 2; Affidavit of Robert Novack, Paragraph 2–3. As also discussed above, Klar's behavior displays neither a "complete lack of diligence," "professional incompetence," nor "ignorance of the rules of procedure." *Consolidated Freightways*, 827 F.2d at 919.

Klar's illness is not incapable of verification by the court; her affidavit and that of Novack provide the court with sworn testimony concerning her malady. Although the court cannot find from these affidavits that Ms. Klar was absolutely too ill to contact her firm, a showing of excusable neglect due to illness requires only that

Ms. Klar have been "unable to file the appeal and ... not *reasonably* capable of communicating to co-counsel [her] inability to file." *Islamic Republic of Iran v. Boeing Co.,* 739 F.2d 464 (9th Cir.1984) (per curiam), *cert. denied,* 470 U.S. 1053, 105 S.Ct. 1755, 84 L.Ed.2d 819 (1985) (emphasis supplied). The court is satisfied that Klar's illness meets this standard.

Moreover, Klar's illness was not "readily foreseeable," and therefore the failure to provide a contingency plan for it is excusable neglect. *Id.* Indeed, the record demonstrates that Klar held the responsibility of filing the notice as part of a plan to avoid the very situation which occurred in *Commonwealth of Virginia,* where counsel had failed to provide adequately for filing during attorney's vacation period. *Commonwealth of Virginia,* 508 F.Supp. at 188. Finally, Klar's behavior, when viewed in light of the remaining *Consolidated Frieghtways* factor, satisfies the court that Bradco's "inadvertence resulted despite good faith efforts toward compliance." *Consolidated Frieghtways,* 827 F.2d at 919.

Bradco has demonstrated that a finding of excusable neglect is warranted, therefore the court next addresses Bradco's motion for stay pending appeal. Both Bradco and Fyfe have submitted certifications concerning this motion. Neither party, however, has made any of the arguments required for the issuance of a stay regarding:

(1) whether irreparable injury to the person seeking the stay will result if the stay is denied;

(2) whether substantial harm will be worked on other persons if the stay is granted;

(3) whether the stay would harm the public interest; and

(2) the likelihood that the party seeking the stay will prevail on the merits of the appeal.

*Marshall v. Berwick Forge & Fabricating Co.,* 474 F.Supp. 104, 108 (M.D.Pa. 1979). The parties' dispute concerning the stay does not address these factors, but focuses solely on the bond's amount. Had the parties been able to stipulate to this amount the court would be better persuaded that a stay should issue. But the parties' positions on this matter demand that the court refuse to fashion arguments or relief for either side. The court will grant Bradco's motion for an extension of time, and deny that party's motion for a stay. An order accompanies this opinion. No costs.